## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DANIEL GRIFFIN,

    Plaintiff,

    v.

                               Civil Action No.:  JRR-24-1344

SGT. L. SHONIA, et al.,

    Defendants.

## MEMORANDUM OPINION

Self-represented Plaintiff Daniel Griffin, an inmate presently incarcerated at Roxbury Correctional Institution in Hagerstown, Maryland, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Sgt. L. Shonia, Lieutenant Al Brown, Sergeant Tina Price, Major Noel Ganzzermiller, Valerie Johnson, Dr. Sadik Ali, William Garrett, and Babar Shaffer.  ECF No. 11. Plaintiff alleges he was assaulted at three different institutions and did not receive adequate medical care following those incidents. *Id.*

Dr. Ali filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment.  ECF No. 27.   Defendants Brown, Ganzzermiller, Johnson, and Price ("State Defendants") and Defendant Garrett have moved for dismissal.  ECF Nos. 31, 51.  Mr. Griffin opposes the motions. ECF Nos. 33, 34, 57.  Defendants all filed replies.  ECF Nos. 36, 41, 58.  Mr. Griffin filed a surreply to Dr. Ali's motion.  ECF No. 55.  Also pending is Mr. Griffin's renewed motion to appoint counsel.  ECF No. 35.  Having reviewed the submitted materials, the court finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, Defendants' Motions will be granted in part and denied in part, and counsel will be appointed for Mr. Griffin as this case proceeds to discovery.

## BACKGROUND

In his second amended complaint, Mr. Griffin complains of three separate events in which his Fourth, Eighth, and Fourteenth Amendment rights were allegedly violated.  First, Mr. Griffin alleges that on August 30, 2023, he was assaulted by another detainee in the Patapsco Traffic Court bullpen while Mr. Griffin was restrained in leg shackles.  ECF No. 11 at 4.  The unprovoked attack left him with a broken left orbital socket, left zygomatic arch contusion, and peripheral vision impairment.  *Id.*  Mr. Griffin contends that Defendant Sgt. L. Shonia (also spelled in the papers as "Phonia"),[1] during the evening shift, failed to place him in protective custody.  *Id.* at 5.  He further asserts that Sgt. Al Brown is culpable because he knew the attack was unprovoked but nonetheless failed to grant Mr. Griffin protective custody.  *Id.*

Next, on September 25, 2023, at the Metropolitan Transition Center ("MTC"), Mr. Griffin was assaulted by two inmates who broke his right leg and tore his knee meniscus.  ECF No. 11 at 4.  Intelligence and Investigative Division ("IID") Inspector Valerie Johnson interviewed Mr. Griffin that same day at Johns Hopkins Hospital before he went underwent surgery.  ECF No. 11-1 at 1.  He complains that she failed to move him to protective custody following his explanation of the incident in question and did not follow any investigative procedures to prosecute the inmates responsible.  *Id.* at 2.  Mr. Griffin states that no further action was taken by Johnson and she has ignored his subsequent inquiries.  *Id.*  He also asserts that Captain Noel Ganzzermiller arbitrarily and capriciously removed him from a single room in the MTC hospital to a hospital dorm despite knowing this may put him in harm's way.  *Id.* at 5.  Mr. Griffin did not request removal from protective custody and states Ganzzermiller knew he was at risk of harm due to his criminal

---

[1] Despite the Court and counsel's attempts to identify Sgt. Shonia, this Defendant has yet to be successfully identified. In his opposition responses, Mr. Griffin also identifies this individual as Sgt. L. Phonay and Phonya.  ECF Nos. 33 at 5; 34 at 2.

charges.  *Id.*  According to Mr. Griffin, he was assaulted three more times "while under MTC hospital care."  *Id.*

Mr. Griffin further claims that Dr. Ali failed to timely authorize physical therapy for him, delaying his start by approximately one month during which he was immobilized.  *Id.* at 2-3.  He also attributes a one-month delay to William Garrett, the physical therapist, because he failed to start sessions with Mr. Griffin despite receiving orders from an attending physician.  *Id.* at 3.  Due to the delays, Mr. Griffin alleges that he requires additional physical therapy for his limited range of motion, which he has yet to receive.  *Id.*  Mr. Griffin also claims that Defendant Babar Shaffer (spelled in the papers as "Babar Shaffiq"),[2] who performed his surgery, failed to ensure that he was returned to "optimal ambulation" thus causing a permanent disability.  *Id.* at 3-4.

Finally, on February 14, 2024, upon returning from court, Mr. Griffin was again attacked by known gang members in the MTC hospital.  ECF No. 11 at 4; ECF No. 11-1 at 5.  He suffered a perforated lip, blood loss, and a wrist injury.  ECF No. 11 at 5.  Ganzzermiller refused to return Mr. Griffin to protective custody after this incident.  ECF No. 11-1 at 6.  After he was discharged from the MTC hospital and returned to the Baltimore Central Booking & Intake Center ("BCBIC") on February 24, 2024, Mr. Griffin requested that Sgt. Phonia place him in protective custody, but his request was refused.  *Id.*  He complains that he wrote a statement explaining why protective custody was necessary following which Sgt. Phonia placed him in harm's way a fourth time; Mr. Griffin fails to describe what, if anything, occurred.  *Id.*  Mr. Griffin seeks monetary damages as relief.  ECF No. 11 at 5.

On October 10, 2024, Mr. Griffin submitted a letter to the court, which the court construed as a supplement to his second amended complaint.  ECF No. 16.  In it, Mr. Griffin alleges ongoing

---

[2] In Defendant Ali's Motion, he identifies this individual as Dr. Babar Shafiq, an orthopedist.  ECF No. 27-1 at 4.

failures to provide him with medical care, theft of his typewriter and packages, deprivation of institutional credits, and his poor conditions in administrative segregation. *Id.* Mr. Griffin states he intended to add additional defendants, but never did so. *Id.*

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Importantly, a proper complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "determin[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

*Pro se* complaints are construed liberally and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Notwithstanding this liberal construction, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

When ruling on a motion to dismiss, the Court may consider materials attached to the complaint without transforming the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 10(c). The Court may also consider materials attached to a motion to dismiss, so long as such materials are integral to the complaint and authentic. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## DISCUSSION

### A. State Defendants' Motion to Dismiss

State Defendants assert they are entitled to dismissal because state employees are immune from suit by operation of the Eleventh Amendment, Mr. Griffin fails to state a claim for relief, and because the State Defendants are entitled to qualified immunity. ECF No. 31-1. The Court must first determine whether this action was brought against Defendants in their official and/or individual capacities. Mr. Griffin's complaint does not so specify. *See* ECF No. 11. "[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's

claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id; see also Love v. Hogan*, Case No. 22-1928, 2025 WL 763473, at *2 (4th Cir. Mar. 11, 2025) (where plaintiff sought compensatory and punitive damages, and defendants raised qualified immunity defense, plaintiff held to have sued defendants in official and personal capacities).

Here, Mr. Griffin seeks compensatory damages and State Defendants raise a qualified immunity defense, indicating they have interpreted the action to be against them in their personal capacities; they also raise an Eleventh Amendment immunity defense, indicating they interpret the action to be against them in their official capacities as well. Therefore, the Court will construe the action as against State Defendants in both their individual and official capacities. For the reasons discussed below, all official capacity claims must be dismissed.

The Eleventh Amendment to the United States Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State Defendants are all Maryland state employees. Suit against an agent of the state for action taken in an official capacity is equivalent to suing the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Mr. Griffin's official capacity claims against State Defendants are barred by the Eleventh Amendment and will be dismissed with prejudice. Claims against State Defendants in their individual capacities will now be reviewed for sufficiency.

A defendant's personal direct action—or failure to act—is required for liability under § 1983. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926,

928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. An official like Sgt. Price may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971)). Here, other than naming him in the caption of the complaint, Mr. Griffin does not make any specific allegations against Sgt. Price. Therefore, she will be dismissed from suit.

Defendants Ganzzermiller, Brown, and Johnson argue that Mr. Griffin fails to state a viable § 1983 claim for violation of his rights as a pretrial detainee under the Fourteenth Amendment for failure to protect him from harm. ECF 31-1 at 11. To state a claim for failure to protect from attack by another detainee, a pretrial detainee first must allege an objectively "serious deprivation of his rights in the form of a serious or significant physical or emotional injury," or substantial risk of either form of injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). This inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Then, as for any Fourteenth Amendment claim, the plaintiff must allege that the injury or risk of injury resulted from the defendant's action or inaction, and that "the 'governmental action they challenge'" is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)) (internal quotation marks omitted). *Id.* at 611. A pretrial detainee can state a Fourteenth Amendment claim "on [a] purely objective basis" because "*Kingsley*'s objective test

7

extends to all pretrial detainee claims under the Fourteenth Amendment . . . for deliberate indifference to an excessive risk of harm." *Id.* at 610–11.

Mr. Griffin contends that Ganzzermiller was aware of the nature of his convictions, which he contends subjected him to otherwise unprovoked assaults. Mr. Griffin does not describe his convictions or explain what inference Ganzzermiller should have drawn from those convictions in his complaint, but avers in opposition to the motion that he is incarcerated due to alleged "sexual improp[r]iety with a minor." ECF No. 34 at 1. Construing the facts alleged in the light most favorable to Mr. Griffin, he contends that following the unprovoked assaults in August and September 2023, Ganzzermiller should have been aware that he was at risk of harm from other detainees; therefore, a reasonable factfinder could conclude that his failure to place Mr. Griffin in protective custody upon his request was unreasonable and put him in a position to be attacked again in February 2024. Mr. Griffin adequately pleads a claim against Ganzzermiller.

Mr. Griffin also pleads sufficient facts to maintain his claim against IID Inspector Johnson. His allegations against Johnson center on her investigation of the September 2023 incident; he alleges that after hearing his description of the assault, Johnson should have placed him in protective custody and pursued criminal charges against the assailants. Johnson argues that Mr. Griffin fails to identify how her investigation of the incident led to a duty for her to put him in protective custody. ECF No. 31-1 at 13. It appears to the Court, and apparently to Mr. Griffin, that as part of the internal investigation unit, it might reasonably be found that Johnson should have advised the correctional staff about the nature of detainees' altercations, and to house detainees subjected to assault (or otherwise embroiled in physical altercations) away from known enemies (whether in protective custody or not). Moreover, while IID may not be empowered to bring criminal charges, it remains unclear whether it was within Johnson's power to refer Mr.

Griffin's assailants to state law enforcement for criminal charges or recommended disciplinary charges based on the findings of her investigation.  Accepting Mr. Griffin's allegations as true, he sufficiently pleads that Johnson knew he had been attacked and failed to take any action based on her investigation, leaving him vulnerable to assault months later.  Therefore, his claims against Johnson shall proceed.

Mr. Griffin, however, fails to state a viable claim against Brown.  He seeks to hold Brown liable for the August 2023 assault because Brown allegedly knew it "was unprovoked" and that Mr. Griffin had been subject to prior assault and yet still failed to grant him protective custody.  Mr. Griffin does not explain what incidents prior to August 2023 should have led Brown to know of a heightened risk that Mr. Griffin would be attacked again; instead, Mr. Griffin conclusorily alleges Brown's knowledge. Absent more, Mr. Griffin cannot establish that it was objectively unreasonable for Brown to reject a request for protective custody following a singular "unprovoked" incident.

State Defendants also contend they are entitled to qualified immunity.  Their brief statement of case law and conclusory argument is insufficient to establish such immunity at this juncture.  Therefore, State Defendants' Motion to Dismiss shall be granted as to Price and Brown, and denied as to Ganzzermiller and Johnson.

**B.  Defendants Garrett and Ali's Motions to Dismiss**

In their respective motions to dismiss, Defendants Garrett and Ali assert they are each entitled to dismissal because Mr. Griffin fails to state a claim for medical negligence, failed to comply with the requirements of Maryland's Health Care Malpractice Claims Act, and fails to state a claim for violation of his Eighth Amendment rights.  ECF Nos. 27-1, 51.

A negligence claim based on medical care is a malpractice claim that, under Maryland law, Mr. Griffin may assert only if he can demonstrate that he exhausted administrative remedies by first presenting it to the Maryland Health Care Alternative Dispute Resolution Office. MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-10; *Wilcox v. Orellano*, 443 Md. 177, 184 (2015); *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (holding that this requirement applies to medical malpractice claims filed in state or federal court). It appears Mr. Griffin has not satisfied this requirement. The Court will dismiss the medical negligence claims.

As to the constitutional claims, Garrett and Ali argue that Mr. Griffin fails to state an Eighth Amendment claim; however, because Mr. Griffin was a pretrial detainee at the time in question, his claims fall under the Fourteenth Amendment. As discussed above, in *Short v. Hartman*, the Fourth Circuit held that the *Kingsley* objective standard for Fourteenth Amendment claims "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" 87 F.4th 593, 608-09 (4th Cir. 2023) (quoting *Kingsley*, 576 U.S. at 396–97). "To state a claim of deliberate indifference to a medical need … a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short*, 87 F.4th at 611. This means that a pretrial detainee "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.*

10

Garrett contends that Mr. Griffin's "dissatisfaction with the care he received, alleging only that Garrett did not provide physical therapy within his desired timeline and the desired additional physical therapy" is insufficient to state a claim.  ECF No. 51 at 5.  The Court disagrees with Garrett's characterization of Mr. Griffin's claims.  In his pleading, Mr. Griffin alleges that he broke his leg and tore his meniscus requiring surgery and physical therapy.  Dr. Ali concedes that Mr. Griffin's leg injury presented an objectively serious medical need.  ECF No. 27-1 at 17.

Mr. Griffin asserts Dr. Ali failed properly to authorize his physical therapy, which Mr. Griffin therefore was prevented from beginning within an appropriate timeframe; as a result, Mr. Griffin asserts he was left immobile in the meantime with a significantly impaired range of motion which required additional physical therapy sessions.  Having presented a serious medical condition, which Mr. Griffin alleges Ali and Garrett failed to address appropriately, and which they should have known Mr. Griffin could not recover from without physical therapy, the Court finds that Mr. Griffin states claims against both Defendants under the Fourteenth Amendment.  Therefore, Ali and Garrett's dispositive motions will be granted as to the medical negligence claims and denied as to the constitutional injury claims.

Dr. Ali's motion alternatively seeks summary judgment.  The Court declines to convert the motion due to Mr. Griffin's stated need for discovery and assistance of counsel.  Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (*per curiam*); *McCray v. Maryland Dep't of Transp.,* 741 F.3d 480, 483 (4th Cir. 2014).

A party opposing conversion of a motion to dismiss into one for summary judgment must ordinarily submit a Rule 56(d) affidavit setting forth their reasons for opposition. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Even without a Rule 56(d) affidavit, however, the court may consider whether the nonmoving party "adequately informed the [] court that the motion [for summary judgment] is [premature] and more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). The Fourth Circuit has emphasized that discovery is "broadly favored" in advance of reaching summary judgment and district courts are to afford pro se plaintiffs leniency with regard to the requirements of Rule 56(d). *Farabee v. Gardella*, 131 F.4th 185, 193–95 (4th Cir. 2025); *see Jenkins v. Woodard*, 109 F.4th 242, 251 (4th Cir. 2024) (citing *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)). This is especially true "when a case involves complex factual questions about intent and motive" and "the relevant facts are exclusively in the control of the opposing party." *Harrods Ltd.*, 302 F.3d at 247 (citations omitted).

In his renewed motion for counsel, Mr. Griffin states that in addition to having been unable to obtain IID records and video evidence relevant to the assaults in question, he requires assistance due to a traumatic brain injury and limited access to the law library. ECF No. 35 at 1-3. Mr. Griffin also cites a particular need for counsel's assistance in discovery relevant to physical therapy orders set forth within hospital discharge documents and Dr. Ali's awareness of same. ECF No. 55 at 1-2, ECF No. 34 at 3.

For these reasons, the Court declines to treat Dr. Ali's motion as one for summary judgment, and to appoint Mr. Griffin counsel. Following review of the pleadings and relevant filings, counsel should advise the Court whether they intend to pursue Mr. Griffin's claims against

unidentified/unserved defendants and whether they intend to move to amend the operative complaint.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions are granted in part and denied in part. The Second Amended Complaint is dismissed against State Defendants in their official capacities and against Defendants Price and Brown in their individual capacities.  Mr. Griffin's medical negligence claims against Defendants Ali and Garrett are also dismissed.  This case shall proceed on Mr. Griffin's constitutional claims against Defendants Ganzzermiller, Johnson, Ali, and Garrett.  Mr. Griffin's Renewed Motion for Appointment of Counsel is granted.

A separate Order follows.

/S/

September 10, 2025

_____
Julie R. Rubin
United States District Judge

13